193 N.J. Super. 23 (1983)
471 A.2d 1215
CHARLES NEWELL ATKINSON, PLAINTIFF,
v.
PITTSGROVE TOWNSHIP, SALEM COUNTY; SALEM COUNTY TAX BOARD; AND THE H.D. MARTIN COMPANY OF MILLVILLE A/K/A NATHANIEL ROGOVOY, DEFENDANT.
Superior Court of New Jersey, Chancery Division Salem County.
Decided November 9, 1983.
*25 Charles Newell Atkinson, pro se, plaintiff.
Duane R. Bell, for defendant.
EDWARD S. MILLER, J.S.C.
This is the fourth lawsuit brought by Atkinson against the Township of Pittsgrove on exactly the same facts, alleging the same cause of action and demanding essentially the same relief. It is clearly frivolous. Since it is the court's policy to give pro se *26 litigants their full say in open court, the court permitted Atkinson to speak at length on his own behalf on the return day of defendant's motion for summary judgment. He did so in detail and while doing so convinced the court of his bad faith in bringing the suit.
Plaintiff brought his first suit in the Law Division, Salem County, in 1977 upon his return to New Jersey following approximately 50 years of residency in Maryland and Washington, D.C. He alleged essentially that an in rem tax foreclosure 11 years before of land he owned in Salem County was fraudulent and invalid because Pittsgrove Township did not personally serve him with or mail to him the summons and complaint and either failed to search for or failed to disclose his whereabouts so that such notice of the foreclosure could be given. Defendant moved to dismiss the action because the six-year statute of limitations for injury to real property had run. Judge Narrow ruled that because the law at the time of the foreclosure (1) made publication of the complaint notice to the world; (2) did not require inquiry by the taxing authorities into the whereabouts of property owners whose lands were being foreclosed; and (3) placed the burden of discovering tax liability on the property owner, plaintiff's contention that he did not learn of the Township's alleged fraud until 1973 would not save his case. He therefore dismissed the case as barred by the statute of limitations.
Plaintiff appealed and the Appellate Division reviewed the case in 1975. It affirmed the ruling below, having considered and rejected plaintiff's assertion that because of the fraud alleged, the statute of limitations should be extended.
In 1977, plaintiff began litigation in the United States District Court for the District of New Jersey on the same facts, but seeking a declaratory judgment declaring the notice provisions of the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq. unconstitutional and seeking damages against Pittsgrove Township officials under 42 U.S.C. § 1983 for deprivation of property rights without due process of law.
*27 Subsequent to the commencement of this federal action, the New Jersey Supreme Court held the notice provisions of the Tax Foreclosure Act unconstitutional  but specifically directed that [i]n order to avoid upsetting settled titles based on foreclosure proceedings, the requested relief was granted to the landowner in this case, but the decision should be applied prospectively only. Township of Montville v. Block 69, Lot 10, 74 N.J. 1, 20 (1977).
The Federal District court took note of the decision and of the court's specific direction that only tax foreclosure proceedings pending at the time of the decision and those commenced after the decision were to benefit from it. It noted, moreover, that [t]he validity of the notice provisions at the time the officers acted upon them was not uncertain. The New Jersey Supreme Court held in Newark v. Yeskel, 5 N.J. 313 (1950) that the notice provisions of the New Jersey in Rem Tax Foreclosure Act were constitutional. [Emphasis supplied].
Defendant in the federal case stipulated that the notice provisions were now viewed as unconstitutional, but moved for summary judgment on the basis of the prospective application of the Montville ruling. The District Court granted summary judgment in favor of Pittsgrove Township.
Though it was unfortunate for Atkinson that his case fell on the wrong side of a line drawn of absolute necessity by the New Jersey Supreme Court, the District Court properly applied state law and properly rejected his argument that the Township's actions under the notice provisions  subsequently declared unconstitutional  render the tax foreclousre against his land null and void.
Having refused to render a de novo judgment on the state law claims on the basis of the decision in Montville, the District Court proceeded to discuss the effect that the existing and still valid judgment of the state courts would have on a federal court. It explained that in this kind of case it was bound to apply the state statute of limitations and since that was true "a *28 state court judgment against the same plaintiff on the same cause of action regarding the running of statute of limitations is res judicata with respect to the federal court." Atkinson v. Township of Pittsgrove, et al, supra, at 2.
It concluded that the pending complaint was the same as the one heard in the state action, except for the addition of federal claims, and thus the decision of the state courts barred the federal court from hearing the state claim portion of the complaint under the doctrine of res judicata.
Turning to the federal claim portion of plaintiff's complaint, the District Court held that these claims were also barred by the doctrine of res judicata. It relied on the two Circuit Court of Appeals decisions, one which, on very similar facts, held that:
[w]here the federal constitutional claim is based on the same asserted wrong as was the subject of a state action, and where the parties are the same, res judicata will bar the federal constitutional claim whether it was asserted in state court or not, for the reason that the state judgment on the merits serves not only to bar every claim that was raised in state court but also to preclude the assertion of every legal theory or ground for recovery that might have been raised in support of the granting of the desired relief.

Scoggin v. Schrunk, 522 F.2d 436, 437 (9th Cir. 1975).
The District Court specifically pointed out that "[a] decision by a court of competent jurisdiction that the statute of limitations on a cause of action has run is a judgment on the merits for res judicata purposes." [Emphasis supplied]. Charles N. Atkinson v. Township of Pittsgrove, et al., supra, at 2, citing Mathis v. Laird, 457 F.2d 926 (5th Cir.1972), cert. denied, 409 U.S. 871, 93 S.Ct. 201, 34 L.Ed.2d 122 (1972). As an alternative ground, the District Court held that Pittsgrove Township was immune to the § 1983 action.
Plaintiff appealed the District Court's ruling to the Third Circuit Court of Appeals. That court affirmed without opinion and plaintiff petitioned the United States Supreme Court for certiorari.
While the petition was pending, plaintiff again hauled Pittsgrove Township into court on the same cause of action, this time opening the litigation in 1978 in the Chancery Division of the *29 Superior Court of New Jersey, Salem County. Again, defendant moved to dismiss the complaint.
Judge Gruccio granted the motion on grounds of res judicata. He explained that since the original state action the Appellate Division had affirmed Judge Narrow's ruling and plaintiff did not seek certification by the New Jersey Supreme Court, he was not now entitled to appeal Judge Narrow's decision in the Chancery Division or any other court. Plaintiff appealed Judge Gruccio's decision and the Appellate Division affirmed per curiam; plaintiff then sought certification by the State Supreme Court. Certification was denied in early 1981. Later that year, the United States Supreme Court likewise denied plaintiff's petition for certiorari.
Plaintiff now drags the officials of Pittsgrove Township  and its taxpayers  into court yet another time.
Alleging the identical facts that he set forth in his previous action, he brings the same claims of fraud, unconstitutionality and violation of his federal rights that were held barred by prior courts on grounds of statute of limitations or res judicata. Because this Court is plainly and simply not any sort of super appellate court and has no power to overturn or ignore those decisions, it likewise finds those claims barred by the doctrine of res judicata.
In addition to the claims held barred by prior courts, plaintiff also raises in this action two claims  still arising out of the same facts alleged in each of plaintiff's prior suits  not raised before.
First, he argues that the foreclosure is null and void because of the alleged unconstitutionality of N.J.S.A. 54:4-63.26 which he claims lifted tax exempt status from the property at issue. This claim is barred by either of two legal doctrines. It is clearly barred by the statute of limitations, N.J.S.A. 2A:14-1 (six years for injury to real property), for even under plaintiff's erroneous view that the injury to his land accrued in 1973, ten years have elapsed since that date. Plaintiff's claim is also *30 barred by res judicata, for under the "single controversy" subdivision of that doctrine a plaintiff cannot bring claims arising out of the same facts seriatim  he must litigate them in one action or waive them. Nuzzi v. United States Casualty Co., 121 N.J.L. 249 (Errors & Appeals 1938); Ward v. Village of Ridgewood, 531 F. Supp. 470 (D.N.J. 1982).
Second, plaintiff alleges on the original facts what the court perceives to be a negligence action against Salem County and the Salem County Tax Board for failing to properly oversee the actions of Pittsgrove Township's tax officials which led to the foreclosure.
This claim, while not barred by res judicata because there are new defendants, is on its face barred by the statute of limitations, N.J.S.A. 2A:14-1; the foreclosure occurred in 1962 and the acts complained of occurred more than twenty years ago. The Tort Claims Act further bars it, R.S. 59:1-1, et seq.
Finally, plaintiff has named one other new defendant in this fourth suit, the H.D. Martin Company a/k/a Nathaniel Rogovoy. After mentioning in the complaint that this defendant purchased the property at the tax sale, plaintiff alleged no cause of action against it!
For these reasons, plaintiff's suit against Pittsgrove Township and the other named defendants is dismissed with prejudice.
Since plaintiff has elected to pursue the same fruitless and groundless cause four times, the Township included in its motion for summary judgment a claim for attorneys fees, pointing out that it has for the second time been compelled to respond to a totally unnecessary and frivolous suit. This impels the court to examine the question of its power to grant defendant's demand.
It is essential to point out that this does not involve an award of counsel fees under R. 4:42-9. That rule governs an allowance of attorneys fees as a part of the taxed costs by a prevailing party. This case involves the imposition of sanctions against one who frivolously abuses the legal process. It is cognate to *31 the sanctions imposed upon the party who is tardy in answering interrogatories, R. 4:23-5.
First, it is undeniable that the Superior Court has the power and jurisdiction to impose such sanctions. It is a constitutional court whose basic jurisdiction and prerogatives stem from the two great common law tribunals, the Court of Kings Bench and the Court of Chancery. Save only such constitutional limitations as are imposed by the Fourteenth Amendment to the United States Constitution and the Declaration of Rights and Privileges in the New Jersey Constitution, the great prerogative of these common law courts exist today undiminished. See the Constitution of 1776, Article XXII; Constitution of 1844, Article VI, § 1, and Article X, § 1 "the several courts of law and equity ... shall continue with the like powers of jurisdiction as if this constitution had not been obtained". See also the dissertations of Chief Justice Beasly and Justice Van Syckle in Harris v. Vanderveer's Executor, 21 N.J. Eq. 424, 433, 442 (E & A 1869); See further dealing primarily with the prerogative and prerogative writs of the former Supreme Court, Harris, Pleadings and Practice of New Jersey, § 22, page 18 and § 705, page 714.
Granted that this court has the inherent power to impose sanctions, the next question is whether it is interdicted to do so by the rules of practice, R. 4:42-9 which regulate the power to impose counsel fees. The court holds that it is not forbidden to do so.
First, it is heretofore stated, R. 4:42-9 deals with the imposition of taxed costs and not with penalties or sanctions, but simply refers to a different subject matter. There is presented here no aspect of the abuses of the pre-1948 Chancery Practice with respect to the award of counsel fees, the elimination of which is the object of R. 4:42-9, see comment to this rule in Pressler, Current J.J. Court Rules.
Second, R. 1:1-2 states the purpose of all rules as being to seek simplicity and provide fairness in administration and the *32 elimination of unjust expenses and delay. It further permits a relaxation of the rules and allows the court to "proceed in any manner compatible with those purposes" in the absence of the rule. In short, this court has the power and duty to protect the purity and efficiency of its own processes against the type of conduct pursued by plaintiff herein. The court has the inherent power to protect itself and litigants against harassment and vexacious litigation and an abuse of process, Masholie v. River Edge, 135 N.J. Eq. 193, 199 (Ch. 1944), aff'd 136 N.J. Eq. 118 (E & A 1945). See also, Ward v. Ridgewood, 531 F. Supp. 470, 473 (U.S.D.C. 1982).
While the court enthusiastically agrees with the suggestion made by the New Jersey Law Journal, December 9, 1982, that the Civil Practice Committee present a rule to the Supreme Court providing for allowance of a counsel fee in this type of case, the rule is not a prerequisite. The rules of court govern the manner of exercising existing powers, not the creation of new ones. They are adjectival only, not substitute. This power is already inherent in the court.
Next, it must be considered whether the court ought to act in this case. In order to form a judgment in this respect, the court not only studied the record but permitted plaintiff wide latitude in presenting his views in open court and on the record. From all of the above and based upon his observations of plaintiff, the court finds that his persistence in his futile quest is inexcusable. He is clearly of sound mind, voluable, argumentative, and, indeed, abusive in his unilateral refusal to accept reality. The conclusion is inescapable and the court finds as a fact that he is acting in bad faith, in wanton disregard of not only other persons rights and is fully perceptive of what he is doing and of its implications. No court ought to be required to put up with this type of conduct. This court refuses to do so.
It is, of course, true that this power must be exercised sparingly. One of the great accomplishments of the Anglo-American system of justice is that the courts are open freely to *33 all; that no man should be denied his day in court and that our judges are free to entertain new and novel theories of liability. That is precisely how the common law has grown and developed from its earliest beginnings. Moreover, the courts have freely permitted pro se proceedings and patiently encouraged those who seek justice at their hands but who cannot afford or are otherwise unable to obtain counsel. However, this liberality is not inexhaustible and when the energies not only of the court but also of the litigants on the other side (who, after all, are entitled to justice and whose rights must equally be protected) are needlessly invaded, it is proper to terminate such behavior forthwith.
The United States Supreme Court has begun to impose similar sanctions under its Rule 49.2, Tatum v. Regents, ___ U.S. ___, 103 S.Ct. 3084, 77 L.Ed.2d 1346 (1983). This court, in the face of plaintiffs flagrant activity, exercises its rights under R. 1:1-2 and imposes sanctions in the amount of a $500.00 penalty, payable to the clerk of the court. Jurisdiction is retained and in the event similar misconduct occurs again, will impose a counsel fee payable to the Township as well as an increased penalty.