**Herbert CAHN, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**Civil Action No. 02–3671(MLC).**

United States District Court, D. New Jersey.

June 19, 2003.

Herbert Cahn and Ruth Cahn, Rumson, NJ, plaintiffs pro se.

Christopher J. Christie, United States Attorney (Pamela R. Perron of counsel), Newark, NJ, for defendant United States of America.

Dechert (Ezra D. Rosenberg of counsel), Lawrenceville, NJ, for defendant Philip Morris USA, Inc.

Riker, Danzig, Scherer, Hyland & Perretti LLP (Anne M. Patterson of counsel), Morristown, NJ, for defendant R.J. Reynolds Tobacco Co.

Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP (Alan S. Naar of counsel), Woodbridge, NJ, for defendant Liggett & Myers Inc.

LeBoeuf, Lamb, Greene & MacRae, LLP (William S. Tucker, Jr., of counsel), Newark, NJ, for defendant Lorillard Tobacco Co.

Skadden, Arps, Slate, Meagher & Flom LLP (Michael A. Shipp of counsel), Newark, NJ, for defendant U.S. Smokeless Tobacco Co.

## MEMORANDUM OPINION

COOPER, District Judge.

This is an action to recover damages for personal injuries due to tobacco-smoke exposure. The plaintiff Herbert Cahn allegedly has health problems because he was exposed to second-hand tobacco smoke while serving in and employed as a civilian by the United States Army. He seeks to recover damages from the defendant United States of America ("Government") and the defendants Phillip Morris USA, Inc. ("PMI"), R.J. Reynolds Tobacco Co. ("RJR"), Brown & Williamson Tobacco Corp. ("B & W"), Liggett & Myers Inc. ("LMI"), Lorillard Tobacco Co. ("LTC"), and U.S. Smokeless Tobacco Co. ("USSTC") (collectively "tobacco companies"). His wife, the plaintiff Ruth Cahn, brings a derivative cause of action. The plaintiffs also seek to maintain a class action. (Compl. at 2 (stating "other Plaintiffs so injured may demand similarly").)

PMI, RJR, LTC, USSTC, and LMI (collectively "tobacco-company movants") separately move, *inter alia*, to dismiss the complaint as asserted against them. The Government separately moves, *inter alia*, to dismiss the complaint as asserted against it. These defendants also seek to enjoin the plaintiffs from bringing the same or similar causes of action against them in the future.[1] B & W apparently has not been served.

---

1. The Court has reviewed from:

(a) RJR, PMT, LTC, and USSTC: notice of motion; brief in support ("RJR et al. Br."); certification ("Munayyer Certif."), with exhibits; and, reply letter briefs dated 10–31–02, 11–13–02, 12–4–02, and 1–24–03;

(b) LMI: notice of motion; letter brief in support ("LMI 10–10–02 Ltr. Br."); and, reply letter brief;

(c) Government: notice of motion; memorandum in support ("Gov't Mem."); Pamela Perron declaration ("Perron Decl."), with exhibits; Joseph Rouse declaration; Shirley Bridge declaration ("Bridge Decl."), with exhibits; reply declaration, with exhibits; 1–31–03 letter; and, reply memorandum; and,

(d) Herbert Cahn and Ruth Cahn: (1) 10–12–02 letter in opposition to tobacco-company movants ("10–12–02 Ltr."); (2) 11–10–02 supplement to 10–12–02 letter ("11–10–02 Ltr."); (3) 11–15–02 letter in opposition to tobacco-company movants; (4) 11–30–02 letter in opposition to Government ("11–30–02 Ltr."), with exhibit; (5) 12–2–02 supplement to 11–30–02 letter, with exhibit; (6) 12–7–02 supplement to 11–15–02 letter; (7) 1–13–03 supplement to 11–10–02 letter, with exhibits;

The plaintiffs request a "stay of Decision and Order" and an order directing the tobacco companies to advise them of pending class actions that they may join. (11–30–02 Ltr., 10–12–02, Ltr.)

The separate motions by the tobacco-company movants and the Government will be granted to the extent that they seek dismissal of the complaint as asserted against them, and otherwise denied. The plaintiffs' two requests will be denied. The Court, although denying the parts of the separate motions seeking an injunction, will (1) direct any future papers in this action from the plaintiffs be forwarded to Chambers for review and (2) issue a separate order to show cause as to why (a) the complaint should not be dismissed as asserted against B & W, and thus dismissed in its entirety, and (b) the Court should not issue a Notification to the plaintiffs that the Court may impose sanctions and preclude them from instituting any new action or proceeding, based on the same or similar claims, without first obtaining leave of the Court, if they continue to engage in non-meritorious litigation. The Court is publishing this memorandum opinion to inform prospective defendants of the possibility of moving to enjoin the plaintiffs.

## BACKGROUND

### I. Previous Actions: First, Second, and Third Actions

#### A. First action

Herbert Cahn, *pro se*, brought a federal action against the Government in September 1999. Therein, he alleged that he "was injured by long term exposure to tobacco smoke" in his Government workplaces, and that the Government "permitted tobacco smoking in [his] workplaces during the 40 year period 1940–1980, causing cardiovascular disease." (Munayyer Certif., Exs. A & B.) In support, Herbert Cahn certified in December 1999 that:

> In October 1997 I was diagnosed as having severe coronary blockage, leading to bypass surgery as treatment, the cause of blockage attributed to long-term exposure to environmental tobacco smoke. I first learned of the causal connection o/a February 1999.

(*Id.*, Ex. C, at 2.)

The court dismissed that action without prejudice for lack of jurisdiction and failure to exhaust administrative remedies in March 2000. (*Id.*, Ex. D.) At about the same time, Herbert Cahn filed an administrative compensation claim for his alleged injuries with, among others, the United States Department of Labor; it was denied initially in August 2000. (*Id.*, Ex. E, 10–6–00 Herbert Cahn Stmt. ("10–6–00 Stmt.") at 2; Perron Decl., Ex. B, 2–18–00 Dep't of Labor Claim Applic. ("2–18–00 Applic.").)

#### B. Second action

Herbert Cahn, again *pro se*, commenced a new federal action in or about October 2000 against the Government and the tobacco companies. (Munayyer Certif., Exs. E & F, 4–13–01 Ltr. Br. at 2.) He made the same allegations as in the first action. (10–6–00 Stmt. at 2 (alleging smoke exposure in workplace from 1940 to 1980 "caused cardiovascular disease" and "heart disease").)

He then moved to withdraw his complaint as asserted against the tobacco companies pending a further decision on his administrative claim by the Department of Labor. (4–13–01 Ltr. Br. at 2.) The court

(8) 1–14–03 supplement to 1–13–03 letter; (9) 1–27–03 letter in opposition to tobacco-company movants; (10) 2–3–03 letter in opposi-

tion to Government; and, (11) 2–18–03 letter in opposition to Government ("2–18–03 Ltr.").

in April 2001 (1) granted the motion and (2) in response to the Government's "letter," dismissed the complaint as asserted against it for failure to exhaust administrative remedies. (*Id.*, Ex. G.) Herbert Cahn appealed, *pro se,* in June 2001. (*Id.,* Ex. H, Informal Br. at 1.)

The Department of Labor, while the federal appeal was pending, reconsidered the administrative claim, approved it in September 2001, and advised him on how to collect an award. (*Id.,* Ex. H, 9–28–01 Dep't of Labor Dec.; Bridge Decl., Ex. A, 4–19–02 Dep't of Labor Ltr.) This approval was made in response to a reviewing physician's report, which noted that Herbert Cahn "is status post radiation therapy for prostate carcinoma and has ongoing chronic osteoarthritis," and that on:

> November 4, 1997 ... he presented ... with symptoms of typical angina pectoris culminating in ... ultimate angiography and quadruple coronary artery bypass surgery on January 13, 1998.

> . . . . .

> The sole illness related to employment exposure to environmental tobacco smoke is that of coronary atherosclerotic heart disease. This is based on the supplied medical records, the history supplied by Mr. Cahn, and the objective data of his cardiac catheterization and anatomic findings at surgery.... I believe Mr. Cahn to currently be a healthy 84 year old white male having undergone successful coronary bypass surgery to correct significant multi-vessel coronary atherosclerotic heart disease brought on by the sole controllable risk factor of environmental tobacco smoke to which he was exposed for greater than 40 years in the work place.

(*Id.,* Ex. H, 8–15–01 Report.) The Department of Labor decision also noted that on:

> December 15, 1997 you underwent cardiac catheterization. It was at that point that a pathology was recognized and multilevel bypass surgery advised. You had successful coronary artery bypass on January 13, 1998.

(9–28–01 Dep't of Labor Dec.)

The Court of Appeals eventually affirmed the order appealed from in May 2002. (*Id.,* Ex. I, 5–02 Ct. of Apps. Order.) In so doing, the Court noted that "the record makes clear that the Secretary of Labor accepted [Herbert Cahn's] claim (which was based on the same exposure and resultant disease as that set forth in his complaint) for worker's compensation benefits under the Federal Employees Compensation Act." (*Id.*) Herbert Cahn then petitioned to the United States Supreme Court for a writ of certiorari. That petition and subsequent petition for a rehearing eventually were denied.[2]

## C. Third action

Herbert Cahn, again *pro se* and while his federal appeal was pending, commenced an action in November 2001 in the New Jersey Superior Court against the Government and the tobacco companies. His wife, Ruth Cahn, also *pro se,* brought a derivative cause of action. (*Id.,* Exs. K & L.) The same allegations from the first two actions were made again. (*Id.,* Ex. K, 11–5–01 Compl. (stating exposed to smoke in workplaces from 1940–1980, and thus developed "cardiovascular disease").) Herbert Cahn alleged that the "cause of action accrued o/a October 13, 2001 when [he] received ... [the 9–28–01 Department of Labor decision] stating that [his] claim ... of coronary arterial disease was accepted." (*Id.*) The plaintiffs asserted class-action allegations in that action, which were dismissed by the state court in January 2002. (*Id.,* Ex. M.) The state

---

2. *See* http://www.supremecourtus.gov/docket/02–7635.htm.

court also granted the Government's motion to dismiss the causes of action asserted against it for lack of jurisdiction in January 2002. (Perron Decl., Ex. C.)

The state court in July 2002 dismissed the complaint as asserted against the tobacco companies as barred by the two-year statute of limitations under N.J.S.A. § 2A:14–2. (Munayyer Certif., Ex. Q.) The court stated in the underlying decision that:

There's no dispute that the issues and claims that were brought in the [second] federal action are the same as the issues brought in the present [state] action, other than the per quod claim of Mrs. Cahn. All the tobacco company defendants in this [state] case were the same ones added in the second case in the [federal] District Court.

. . . . .

The Court finds [Cahn's] argument that [he] did not know for certain the actual cause, until about the time of [report] dated August 15, 2001, to be without merit.

Cahn admitted in his December 23, [19]99 certification that he had determined by February [19]99 the injury was caused by environmental tobacco smoke. . . . Since the statute will not be tolled once Cahn knew or should have known, that is the objective standard, of the injury and cause, the date will not be tolled after February [19]99.

(*Id.*, Ex. O, at 19, 26–27.) The plaintiffs filed a notice of appeal from the state court order on or about July 31, 2002. (*Id.*, Ex. Q.) The parties have not advised the Court of the status of the state appeal.

## II. Current Action

This fourth action by Herbert Cahn, again *pro se*, which is the second action with Ruth Cahn, again *pro se*, was commenced in this Court on July 29, 2002. This was two days before they filed their notice of appeal in state court. (*Id.*) The tobacco companies and the Government are named again. The allegations in this action read as follows:

Plaintiffs were injured by exposure to environmental tobacco smoke . . . . Injuries were primarily atherosclerosis and secondarily are injuries to other body organs and body systems. Plaintiffs Herbert Cahn and spouse Ruth Cahn first learned of the causal relationship on or about March 2002 from Cahns' treating cardiologist.

(Compl. at 2.)

The tobacco-company movants separately move, *inter alia*, to dismiss the complaint as asserted against them as barred by res judicata. (RJR et al. Br.; LMI 10–10–02 Ltr. Br.) The Government separately moves, *inter alia*, to dismiss the complaint as asserted against it as barred under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. §§ 8101 *et seq.* The aforementioned defendants also move to (1) dismiss the purported class-action allegations asserted against them, and (2) enjoin the plaintiffs from asserting the same or similar causes of action against them in the future. (LMI 10–10–02 Ltr. Br.; Gov't Mem.; RJR et al. Br.)

The plaintiffs argue in opposition that:

Over the extensive period between bypass surgery and the receipt by the Cahns of the report of [the Department of Labor's reviewing physician] received by the Cahns in midOctober 2001, the actual cause of Herbert Cahn's need for bypass surgery was in doubt. [The reviewing physician's] report eliminated the doubt, by his expert opinion that *"coronary heart disease* [was] brought on by the sole controllable risk factor of environmental tobacco smoke to which he was exposed for greater than 40 years."

Until receipt of [the reviewing physician's] report in October 2001, the Cahns could not have known, and indeed had no reason to believe that there was any causative relationship between secondhand tobacco smoke and Herbert Cahn's need for surgery.

(11–10–02 Ltr. (emphasis added).) The Court notes that the plaintiffs have misquoted the reviewing physician's report. It states, as discussed above, that Herbert Cahn had:

coronary bypass surgery to correct significant multivessel *coronary atherosclerotic heart disease* brought on by the sole controllable risk factor of environmental tobacco smoke.

(8–15–01 Report (emphasis added).)

The plaintiffs request a "stay of Decision and Order until such time as United States fulfills its promise to pay Herbert Cahn's workers' compensation in lieu of retirement annuity now being paid." (11–30–02 Ltr.) They are unhappy with the manner in which the Department of Labor is handling Herbert Cahn's administrative claim. They also request the "Court to enable us to demand of the tobacco compan[ies], the identification, through discovery, of all currently active cases which are class actions into which our grievance might fit." (10–12–02 Ltr.)

*DISCUSSION: PLAINTIFFS' CAUSES OF ACTION AGAINST GOVERNMENT; PLAINTIFFS' CAUSES OF ACTION AGAINST TOBACCO–COMPANY MOVANTS; CLASS–ACTION ALLEGATIONS; and, FUTURE SUBMISSIONS*

**I. Plaintiffs' Causes of Action Against Government**

**A. Herbert Cahn's Cause of Action**

■ Herbert Cahn's cause of action against the Government concerns injuries arising from working conditions over the course of his federal employment. However, a federal employee may recover from the Government for those types of injuries solely through the administrative procedure under FECA because:

[t]he [Government's] liability . . . [under FECA] with respect to the injury or death of an employee is exclusive and instead of all other liability of the [Government] to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the [Government] because of the injury or death in a direct judicial proceeding, in a civil action, . . . or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

5 U.S.C. § 8116(c) (emphasis added). As a result, federal employees may receive benefits, regardless of fault and without litigation, "but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194, 103 S.Ct. 1033, 74 L.Ed.2d 911 (1983); *see Hunt v. U.S. Air Force*, 848 F.Supp. 1190, 1193 (E.D.Pa.1994) (stating any compensation plaintiff, a former serviceman and federal civilian employee, "was entitled to receive would have been under FECA, and would have been administered by the Secretary of Labor"). Herbert Cahn is well aware of this, as (1) he filed an administrative claim with the Department of Labor and (2) his claim has been approved. (2–18–00 Applic.; 10–6–00 Stmt.; 9–28–01 Dep't of Labor Dec.; 4–19–02 Dep't of Labor Ltr.; 5–02 Ct. of Apps. Order)

An estate in a similar action alleged that the decedent died because he was exposed to radiation when he was a serviceman and federal civilian employee. *Heilman v. United States*, 731 F.2d 1104, 1105–06 (3d Cir.1984). The *Heilman* court affirmed an order granting the Government's motion to dismiss the complaint as barred by FECA.

*Id.* It noted that if a federal employee's injuries were sustained due to working conditions and thus "covered under FECA, then the federal courts have no subject matter jurisdiction to entertain the action, since the [Government] has not otherwise waived its sovereign immunity to suit." *Id.* at 1109.

■ Herbert Cahn, as the *Heilman* decedent, allegedly was exposed to hazardous conditions while employed by the Government. Thus, his cause of action arising therefrom is barred by FECA as well. To the extent that his cause of action concerns conditions while he was a serviceman, it is also barred because the Government has not waived its sovereign immunity for injuries suffered incident to military service. *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *Heilman,* 731 F.2d at 1107–09. The part of the Government's motion seeking to dismiss Herbert Cahn's cause of action asserted against it will be granted.[3]

■ The plaintiffs' request for a stay will be denied. The handling of Herbert Cahn's administrative claim will not be reviewed by the Court. 5 U.S.C. § 8128(b) (stating allowance or denial of FECA payment not subject to judicial review by mandamus or otherwise).

### B. Ruth Cahn's Cause of Action

■ Ruth Cahn is Herbert Cahn's spouse. Her cause of action against the Government is derivative of Herbert Cahn's cause of action. FECA bars derivative causes of action against the Government by the spouses of federal employees alleging injuries arising from federal working conditions. 5 U.S.C. § 8116(c); *DiPippa v. United States,* 687 F.2d 14, 15–16 n. 1 (3d Cir.1982); *Boyer v. United States,*

510 F.Supp. 1081, 1082 (E.D.Pa.1981); *Swafford v. United States,* 998 F.2d 837, 841 (10th Cir.1993). The part of the Government's motion seeking to dismiss Ruth Cahn's derivative cause of action against it will be granted.

### II. Plaintiffs' Causes of Action Against Tobacco Company Movants

#### A. Res Judicata

The state court dismissed the complaint in the state action as time-barred in a July 2002 order. In addressing that order's effect, the Court assumes *arguendo* that Herbert Cahn's alleged injury here is different from those raised in the previous actions.

■ Res judicata, or claim preclusion: will bar a suit if (1) the judgment in the first action is valid, final and on the merits; (2) the parties in both actions are the same or are in privity with each other; and (3) the claims in the second action ... arise from the same transaction or occurrence as the claims in the first one.

*Sibert v. Phelan,* 901 F.Supp. 183, 186 (D.N.J.1995). Thus, under res judicata, a judgment is given "preclusive effect" by "foreclosing litigation of matters that should have been raised in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). As a result, a judgment "foreclos[es] litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.*

■ The state-court determination is valid and final, and is on the merits. *Watson v. Englewood Police Dep't,* No. 94–

---

**3.** The Government has not argued on the res judicata effect of the May 2002 order of the

Court of Appeals.

3920, 1995 WL 16780, at *1 (D.N.J. Jan.12, 1995) (stating dismissal of action as time-barred on merits in res judicata context); *Tarson v. Marsh*, No. 89–1176, 1989 WL 126531, at *3 (D.N.J. Oct.23, 1989) (same); *Haefner v. County of Lancaster*, 543 F.Supp. 264, 266 (E.D.Pa.1982) (same), *aff'd*, 707 F.2d 1401 (3d Cir.1983) (table decision). The parties named here are named in the state action. The claims here (that Herbert Cahn suffers from atherosclerosis and Ruth Cahn is injured derivatively) arise from the same transactions or occurrences as the claims in the state action (exposure to tobacco smoke in federal workplaces from 1940–1980).

■■■ All of the components of res judicata have been satisfied. It is of no moment that the earlier determination is from state court, as "[a] judgment that is final and therefore res judicata in the courts of one state ordinarily must be given full faith and credit by all other courts in the United States." *Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir.1984).[4] Therefore, the part of the motion by the tobacco-company movants seeking dismissal of the plaintiffs' causes of action as asserted against them will be granted. In light of this disposition, the plaintiffs' request for an order directing the tobacco companies to advise them of pending class actions that they may join will be denied.

The Court notes that the determination would be the same under the entire-controversy doctrine. *See Fornarotto v. Am. Waterworks Co.*, 144 F.3d 276, 278 (3d Cir.1998) (stating doctrine and res judicata blood relatives); *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 965 (3d Cir.1991) (stating doctrine reaches more broadly

than res judicata); *Derby & Co. v. Seaview Petrol. Co.*, 756 F.Supp. 868, 872 (E.D.Pa. 1991) (stating doctrine more broad than collateral estoppel and res judicata).

## B. Collateral Estoppel

■■■ The Court will grant relief to the tobacco-company movants without addressing the seemingly identical nature of the claims raised in the state action and this federal action. But if the Court were not granting relief based on res judicata, the Court would do so based on collateral estoppel. Collateral estoppel, or issue preclusion:

> proscribes relitigation when the identical issue already has been fully litigated. [It] may be invoked when: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

*Bd. of Tr. of Trucking Em'ees of N. Jersey Welfare Fund v. Centra*, 983 F.2d 495, 505 (3d Cir.1992).

■■■ The second and third parts of collateral estoppel would be met easily. The state-court determination was on the merits and the plaintiffs were parties to the state-court adjudication. It is, again, of no moment that the earlier determination is from state court; issues actually litigated in state court are entitled to the same preclusive effect in a subsequent federal action as they would enjoy in the courts of

---

**4.** *See Atkinson v. Pittsgrove Twp.*, 193 N.J.Super. 23, 26–28, 471 A.2d 1215, 1216–17 (1983) (discussing plaintiff who brought state action and then federal action in District of New Jersey before second state action at issue; first state action dismissed as time-

barred, and federal court held state court judgment as to statute of limitations is res judicata as to federal court; federal opinion not published, but affirmed in table decision, *Atkinson v. Twp. of Pittsgrove*, 582 F.2d 1273 (3d Cir.1978)).

the state where the determination was rendered. *Migra*, 465 U.S. at 83, 104 S.Ct. 892.

 The Court, if deciding the issue, would find the first and fourth parts to be met also. It appears that the injuries raised here and in the state action are the same. The Department of Labor's reviewing physician stated that Herbert Cahn suffered from "coronary atherosclerotic heart disease," a conclusion drawn from "the objective data of his cardiac catheterization and anatomic findings at surgery" performed by January 1998. Thus, the plaintiffs' contradictory arguments that they "first learned of the causal relationship on or about March 2002 from Cahns' treating cardiologist" (Compl. at 2.), and that "[u]ntil receipt of [the] report in October 2001, the Cahns could not have known, and indeed had no reason to believe that there was any causative relationship between secondhand tobacco smoke and Herbert Cahn's need for surgery" (11–10–02 Ltr.) are without merit. In addition, Herbert Cahn has stated that he was aware of the alleged connection of his working conditions to his ailment as early as February 1999. Also, the state court gave the plaintiffs a full and fair opportunity to litigate this issue. The Court does not condone the plaintiffs' attempts at obfuscation.

### C. Time-barred

 The Court, if not granting relief to the tobacco-company movants based on res judicata, would also do so under the two-year statute of limitations for personal-injury actions. N.J.S.A. § 2A:14–2. The limitations period begins to run when a reasonable person exercising ordinary diligence becomes aware that a party's conduct may have caused the injury at issue. *Savage v. Old Bridge–Sayreville Med. Group,* 134 N.J. 241, 248, 633 A.2d 514 (1993); *Yarchak v. Trek Bicycle Corp.,* 208 F.Supp.2d 470, 479 (D.N.J.2002) (stating, as to discovery rule, plaintiff to be aware "of material facts relating to the existence and origin of his injury rather than comprehension of the legal significance of such facts").

 Herbert Cahn, as demonstrated by his filings in the first action, was aware of his alleged ailment and its connection to his former working conditions in February 1999. (Munayyer Certif., Ex. C, at 2). He did not commence this action until July 2002. The plaintiffs' allegations—that they were not aware of the causal connection between the ailment and exposure to second-hand tobacco smoke until either October 2001 or March 2002—are contradictory and without merit.[5]

### III. Class–Action Allegations

The purported class-action allegations asserted against the movants will be dismissed because the plaintiffs' own causes of action will be dismissed. The Court will grant the parts of the separate motions seeking that relief.

---

5. This action may be barred under the *Younger*-abstention or *Rooker Feldman* doctrines. If the appeal is pending, then the Court could have abstained from exercising jurisdiction because, *inter alia*, there would be ongoing state judicial proceedings. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 435, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). If the appeal has been resolved, then the Court may have lacked subject matter jurisdiction over these claims that were—or could have been—raised in state court, as the plaintiffs may seek review through the state appellate process and, if warranted, a writ of certiorari to the United States Supreme Court. *D.C. Ct. of Appeals v. Feldman,* 460 U.S. 462, 482 n. 16, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fid. Tr. Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

The Court, nonetheless, would have granted the parts of the motions seeking dismissal of the class-action allegations on the merits. *Pro se* plaintiffs are not favored as representative parties in a class action, as they generally cannot represent and protect the interests of the class fairly and adequately. *Caputo v. Fauver,* 800 F.Supp. 168, 170 (D.N.J.1992), *aff'd,* 995 F.2d 216 (3d Cir.1993) (table decision); *Carter v. Ridge,* No. 97–5414, 1997 WL 792967, at *3 (E.D.Pa. Dec.19, 1997); Fed.R.Civ.P. 23(a). The plaintiffs here are *pro se,* and are "without legal training" and "not formally trained in the law." (10–12–02 Ltr., 2–18–03, Ltr.) Thus, they would not be able to represent the interests of a class. *See Krebs v. Rutgers,* 797 F.Supp. 1246, 1261 (D.N.J.1992) (denying class certification to *pro se* plaintiffs without sufficient legal education).

## IV. Future Submissions

The Court is not inclined to enjoin the plaintiffs' future litigation conduct at this time. The parts of the separate motions seeking that relief will be denied. However, the Court will (1) review the plaintiffs' future submissions to determine whether they will be filed, maintained in Chambers, or returned, and (2) issue a separate order to show cause as to why, *inter alia,* the Court should not issue a Notification to the plaintiffs that the Court may impose sanctions and preclude them from instituting any new action or proceeding, based on the same or similar claims, without first obtaining leave of the Court, if they continue to engage in non-meritorious litigation.

### *CONCLUSION*

The plaintiffs' causes of action and purported class-action allegations as asserted against the Government and the tobacco company movants will be dismissed. The Court will issue a separate order to show cause as to why (1) the causes of action and class-action allegations as asserted

against B & W should not be dismissed, and thus the complaint dismissed in its entirety, and (2) the Court should not issue a Notification to the plaintiffs as described above. An appropriate order will accompany this memorandum opinion.